JACKSON, *ex dem.* GOODRICH and others, *against* A. OGDEN and J. OGDEN.

A lessor of the plaintiff in eject-ment cannot be a witness in the cause; if his name is used without his con-sent, it may be struck out, on application to the court. Evi-dence of the acts of the lessor of the plaintiff, in ejectment, which tend to conclude him, and those who derive title un-der him, is ad-missible.

THIS was an action of *ejectment* for land, in the town of *Walton*, in the county of *Delaware*. The cause was tried at the *Delaware* circuit, on the 24th *May*, 1808, before Mr. Justice *Yates*. The declaration contained eleven de-mises. A title was deduced to some of the lessors of the plaintiff to lots No. 15 and 16. in a tract of land originally surveyed for *Peter Van Brugh Livingston*, and others, ly-ing between the west branch of the *Delaware*, and the *Sus-quehannah* river; and the only question at the trial was how the lots were to be located.

The plaintiff produced in evidence a warrant of survey, dated the 8th *October*, 1785, describing the outlines of the tract, and a *return* of the surveyor-general, dated the 29th *April*, 1786, of a survey of the outlines of the tract, as-certaining the quantity to be 35,178 acres, with a map of the lots; and an order from the commissioners of the land-office for a patent to the proprietors, of which *Wattles*, one of the lessors, was one, and a map of partition. He also produced a patent to the trustees of *Adams*, who are also lessors, for No. 15. and a patent to *Wattles* for lot No. 16.

*Jacob Trumpbourn*, a surveyor, testified, that he had traced and chained the south-west lines of the tier of lots, from No. 1. to the *Delaware;* that tracing the lots, from No. 1. to a hemlock tree, blazed on four sides, and then locat-

ALBANY,
February, 1809.

Jackson
v.
Ogden.

ing No. 16. on the *Delaware*, according to the distance in the patents, there would be a vacancy of about 78 chains.

*Arch. E. Payne*, surveyor, testified, that lot No. 16. according to the description in the patent, contained 101 acres, but by his survey, and as *Griswold* possessed it, it contained 128 acres.

The defendant offered *S. Wattles*, one of the lessors, as a witness, to prove that he surveyed the tract by order of government, and that he made 17 tiers of lots, instead of 16. that he made the map with but 16 tiers of lots, leaving a vacancy between 15 and 16. but he was objected to. He was offered to be sworn on his *voir dire*, that he had no interest in the land, and would disclaim all connection in the suit, but he was rejected by the judge.

*James A. Murrin*, a surveyor, proved, that he traced all the lines of lots 15 and 16. as possessed and located under the patents, and he had no doubt there was a vacant lot between them. The defendants were proved to have been in possession of the premises eight or nine years, and *M'Call*, under whom they claim, fourteen or fifteen years.

By articles of agreement between the defendants and *Griswold*, one of the lessors, dated the 5th *July*, 1797, the defendants covenanted to convey to *Griswold* 50 acres, lying next to lot No. 16. then, and now, in the possession of *Griswold*; and a witness was called to prove that he assisted *Griswold* in laying out the 50 acres, and that *Griswold*, who held lot No. 16. considered it, until lately, as no larger than his possession, according to the distances in the patent. The plaintiff admitted he was in possession of lot No. 16. under a deed from one *Freeman*; and he objected to the evidence of the acts of *Griswold*. The counsel for the defendants insisted, that the plaintiff having recognised the interest of *Griswold*, by making him a lessor, and he being shown to be in possession under title, all the mesne conveyances from *Wattles* to him, were to be presumed. But the judge rejected his evidence, and, under his charge, the jury found a verdict for the plaintiff.

A motion was made, on the part of the defendants, to set aside the verdict;

1. Because *S. Wattles* ought to have been admitted as a witness;

2. Because the evidence of the acts of *Griswold* ought to have been received; and

3. Because the verdict was against evidence.

The case was argued by *Hawkins* and *Ruggles*, for the defendant, and *E. Williams* for the plaintiff.

SPENCER, J. delivered the opinion of the court. The lessors of the plaintiff having, on the trial, deduced a title, in some of them, to lots No. 15 and 16. in a tract of land originally surveyed for *Peter Van Brugh Livingston*, and others, lying between the *Coquaga* branch of the *Delaware* river, and the *Susquehannah* river, in the town of *Walton*, in the county of *Delaware*, it became the sole question on the trial, how these two lots should be located. On the map of partition between the original purchasers, made prior to the issuing of the patents, it appears that lots No. 15 and 16. adjoin each other, and the, patent for lot No. 15. refers to the map on file in the secretary's office. It is required to begin at a beech tree, marked 14 and 15. running thence south twenty-eight degrees east, 70 chains and 81 links, to a hemlock tree, marked No. 15 and 16. running thence north 62 degrees east, 34 chains and 32 links, to a beech sapling, marked No. 15, 16. 31, 32. then north 28 degrees west, 70 chains and 81 links to a maple tree,. marked 14, 15. 30, 31. and then in a direct line to the place of beginning, containing 243 acres. The patent for No. 16. describes the boundaries as follows, beginning at a hemlock tree, marked No. 15 and 16. and running thence south 28 degrees east, 29' chains to the *Delaware* river; then up along the same 34 chains and 32 links, measured on a course north, 63 degrees east to a beech sapling, marked No. 16. thence north 28 degrees east, 30 chains, to a beech sapling, marked No. 15, 16. 31, 32. and thence on a direct line to the place of beginning, containing 157 acres. From the map, and the description of the lots in the patent, the lessors of the plaintiff have made out a title to the premises

in question. It is, however, not to be controverted, that parties, whose rights to real property may be perfect, and the boundaries of which may be susceptible of certain and precise ascertainment, may, by their acts, conclude themselves, by establishing other and different boundaries. *Thomas W. Griswold,* one of the lessors of the plaintiff, and who must be considered, in 1797, as proprietor of lot No. 16. purchased of the defendants 50 acres of the land which they set up to be vacant, and to lie without both lots, 15 and 16. which was described in the instrument he took, as without the bounds of that lot. The evidence of this purchase, though under seal, was excluded by the judge at the trial ; what other evidence might have been adduced, we cannot pretend to say ; it might have been followed up by acts which would conclude *Griswold,* and those who derive title under him, from claiming the premises as within either of the lots, and after the rejection of the covenant entered into between *Griswold* and the defendants, the defendants might well have forborne to offer similar or inferior evidence of acts. In this view, that it was improper to exclude such evidence, and that it should have been submitted to the jury, with such observations as the evidence required, I think there should be a new trial. The rejection of one of the lessors as a witness, I conceive to have been proper ; if his name was used without his consent, it might be struck out on application to the court. The costs must abide the event of the suit.