NATHANIEL M. LOWNEY *versus* DAVID PERHAM.

The possession of a bill of exchange by one who negotiates the same, is presumptive evidence of his ownership of it.

The holder of a bill though others may have an interest in the same, may maintain a suit on it in his own name with the consent of the parties interested.

A witness is not protected from answering, when his answers expose him merely to pecuniary loss.

When a bill in equity and answer are introduced as evidence, the Court have no power, on motion, to order the defendant in equity to answer further, *in order that such answer may be used as evidence in the cause.*

Where an agreement was entered into between the holder of a draft in suit and the acceptor ; that the acceptor was to be defaulted at the then next term of the Court, in which the action was pending, and if a stipulated sum should be paid before such term, the cause was to be continued one term more for judgment, and if the sum was not paid, then judgment was to be rendered on the default ; and the action against the indorser was to be continued — *it was held :* —

That the first clause of the agreement, by which the acceptor was to be defaulted, would enable the plaintiff sooner to obtain judgment and could not be considered as giving time.

That the further agreement for a continuance on payments being made as stipulated, was a conditional contract to give time — and : —

That a conditional agreement not performed, to give time to the acceptor on his payment of part, does not discharge the drawer or indorser.

ASSUMPSIT against the defendant as indorser of a bill of exchange, dated Oct. 5th, 1836, drawn by the defendant upon Benjamin Tainter, for $3000, payable to his own order at the Suffolk Bank, in Boston, in nine months from date, and indorsed by him and by one Richard Treat. Evidence was offered that the bill was duly protested for non-payment, and due notice thereof was seasonably forwarded to the defendant.

The defence was, that usurious interest had been taken in the negotiation of the bill to the plaintiff, and that after the non-payment of the bill, the plaintiff had extended the time of payment to the acceptor.

The following agreement was read in evidence by the defendant: — " Nov. 19, 1838. It is agreed that the action pending in the S. J. Court, Waldo county, *N. M. Lowney* v. *Benjamin Tainter,* be defaulted at the next term, and if one

thousand dollars of the debt be paid before the Court sits in December next, the action shall be continued for judgment to the July Term: otherwise judgment is to be rendered at the next December Term. It is further understood that if the foregoing is agreed to and signed by Mr. Tainter, the action, *Lowney* v. *Perham*, in the same Court is to be continued.

" N. M. Lowney,

" B. Tainter."

No portion of the thousand dollars named in said agreement has ever been paid. It appeared in evidence, that suits had been brought on this draft against both the acceptor and indorser, and that the action, *Lowney* v. *Tainter*, was defaulted at December Term, 1838, and not continued for judgment.

Evidence tending to show that the draft had been loaned on usurious interest, was submitted to the jury.

He also read in evidence a bill in equity in his favor against the present plaintiff, in which he was charged with having discounted the bill at the rate of two per cent. a month on the time it had to run; and he was further required to state what he did give for said draft. The plaintiff in this suit, in his answer, declined stating what sum he did give, and insisted that by law he was not bound to answer. This question being presented to the presiding Judge for his decision, he refused to pass any order upon this matter, giving to the defendant in this suit the full benefit of such refusal, if the full Court should be of opinion, that he had a legal right to such answer.

It was proved, that Tainter had placed real and personal security in the hands of the defendant, the sufficiency of which to indemnify the defendant was submitted to the jury.

It further appeared, that the defendant had indorsed other notes and drafts of said Tainter to a larger amount than the value of the security.

The defendant then called Alfred Johnson, Esq. who being inquired of, as to what the plaintiff said he gave for the draft, declined answering the question, on the ground that he was personally interested in the suit; that the plaintiff informed him before he had taken the draft, upon what terms he could

have it, and proposing that he (the witness) should take a part, and that he did, having advanced originally one third, which amount he now owned; but saying that he was willing to answer the inquiry, if the Judge should decide that he was bound by law so to do. The Judge decided that the witness was not bound to answer the inquiry, and he did not.

The counsel for the defendant, requested the presiding Judge, on the evidence adduced, to charge as follows: —

1. That if the jury should find that the instrument signed by said plaintiff and Tainter, dated the 19th of November, 1838, was actually signed, executed and delivered, that said Perham was thereupon actually discharged from all liability to the plaintiff as indorser or drawer of said draft.

2. That the evidence tending to show that said Perham had been indemnified, does not prevent his being discharged as indorser by said agreement; and that if the jury should find that said Perham had no more property conveyed to him by Tainter than enough to indemnify him against loss from the notes and demands he now holds against said Tainter, exclusive of the one in suit; that in that event, such conveyance will not prevent him from being discharged from his liability as indorser by the agreement of November 19, 1838.

3. That if the jury should find that more than legal interest had been taken by the plaintiff in discounting said bill, that the plaintiff would not be entitled to recover three per cent. as damages on the same.

4. That if the jury should believe from the testimony of Johnson, that he was an original joint purchaser of said bill of exchange, and that he now owns one third of the same, that in such case he ought to have been joined as co-plaintiff, and that the action cannot be maintained by said Lowney alone.

The presiding Judge declined giving these instructions, but charged the jury, that by the execution and delivery of the agreement, dated Nov. 19, the defendant was not discharged from liability on the bill of exchange, that agreement being on condition, and there being no evidence that the condition had been fully complied with.

That if the defendant had not property of said Tainter conveyed to him sufficient, calculating its value at the time of indorsing the draft, to indemnify him for the notes and demands he now holds against said Tainter, and the property has since very materially fallen in value, that in such case, said conveyance will not prevent the defendant from objecting that he is discharged from his liability as indorser by the agreement of Nov. 19, unless it was done by his consent; and as to that the jury would judge; but it was otherwise, if he was fully indemnified at the time of indorsing the bill.

That if the jury were satisfied that the bill of exchange in question was an accommodation bill, and that illegal interest was taken thereon at the discounting of it by the plaintiff, they should deduct that illegal interest and give the three per cent. on the residue; that if they did not find it an accommodation bill, and that illegal interest had been taken, they should give three per cent. damages on the whole bill.

That if they believed this suit was prosecuted in the plaintiff's name by the consent and approbation of those interested therein, the plaintiff might maintain this action.

The jury returned a verdict for the plaintiff, and found specially, that the draft in suit was business and not accommodation paper; that no extra interest was taken in discounting it; and that the defendant was fully indemnified for discounting the same.

*F. Allen,* for the defendant. A witness is not excused from answering when his civil rights are affected. 1 Phil. Ev. 225–6; 1 Hall's Law Journal, 233; *Devoll* v. *Browning,* 5 Pick. 448; *Taney* v. *Kemp,* 4 Har. & Johns. 348; *Stoddard* v. *Main,* 2 Har. & Gill. 147; *Bull* v. *Loveland,* 10 Pick. 9; *Baird* v. *Cochran,* 4 S. & R. 397.

Giving time constitutes a good defence. 3 Kent, 111; Chitty on Bills, (Perkins' ed.) 290; *Hewett* v. *Goodrich,* 2 C. & P. 468; *Franklin* v. *Vanderpoel,* 1 Hall, 78. The agreement of Nov. 19 was valid and mutually binding. The defendant's rights are not dependant on the performance of that agreement. By the mere making of it, the defendant is

discharged. By its terms the plaintiff is precluded for a time from collecting the demand. Between the date of the contract and the next term of the Court, there is a time when the condition was unbroken, and when the plaintiff could not have given up the draft, even if requested. It is the entering into the contract, not the performance, which releases the indorser. *Bank of U. S.* v. *Hatch,* 6 Pet. 250; *M'Lemore* v. *Powell,* 6 Pet. Con. R. 636. Had the defendant taken up the draft and commenced a suit on it, he would have been barred by this agreement.

The question of full indemnification should be determined by the value of the property, when it is needed for that purpose, not by its value when it is conveyed.

*W. Kelly,* for the plaintiff. The witness, Johnson, was not competent to answer, because he was a party in interest, and because, if there was usury, he is not bound even in a bill in equity to disclose it. 3 Stark. Ev. 174; Story's Eq. Pl. 238, 244, 438, 444, 647. His admissions were admissible.

Any one having possession of the bill may maintain a suit in his own name. *Marr* v. *Plummer,* 3 Greenl. 73; *Fiske* v. *Bradford,* 7 Greenl. 28.

There was no usury here, this being a purchase of business paper. *Knights* v. *Putnam,* 3 Pick. 184; *French* v. *Grindle,* 15 Maine R. 163.

The agreement of Nov. 19, was conditional, and those conditions have not been performed. The agreement to be defaulted did not delay, but rather expedited the collection of the debt. If money had been paid, it might be considered as an agreement binding on the party; but that not being complied with, the contract ceases to exist. Chitty on Bills, 229; 2 St. Ev. 288.

The defendant is fully indemnified; and if not, it is his own neglect, for which he alone must suffer. *Mead* v. *Small,* 2 Greenl. 207; *Bond* v. *Farnham,* 5 Mass. R. 170. Being indemnified, he is not entitled to notice.

The opinion of the Court was by

SHEPLEY J. — This suit is on a bill of exchange drawn on the fifth of October, 1836, by the defendant upon Benjamin Tainter and payable to his own order at the Suffolk Bank, Boston, in nine months from date. It was drawn and indorsed by the defendant for the accommodation of Tainter. Richard Treat, according to the testimony of Hayford, introduced by the defendant, is found in possession of the bill and disposing of it to the plaintiff at a discount greater than six per cent. per annum ; and he indorsed it. A question arose on the trial, whether the bill, as between Tainter and Treat, was accommodation or business paper ; and the jury found it to be business paper. It is insisted, that this finding was not authorized by the testimony. The only testimony now presented is contained in the report of the case. It may be true, that Treat was an accommodation indorser and an agent for Tainter in selling the bill, but there is no proof of it. On the contrary he is found in possession of, and dealing with it as his own. He sells it and receives the money. An agency could not be presumed. The Court is not authorized therefore to say, that the jury might not justly conclude, that Treat received it of Tainter for value and sold it for his own benefit.

Regarding the bill then as business paper, should the presiding Judge have required Alfred Johnson to have answered the question, " whether the plaintiff did not inform him how much he gave for said draft, and what it was ?" The witness declined answering, on the ground that he was interested in the bill, having been a joint purchaser of it with the plaintiff. Whatever doubts may have once existed as to the right of a witness to be protected when his answer would not expose him to punishment or subject him to a penalty, but might to a pecuniary loss, the tendency of modern decisions has been to remove them. And it has now become the settled rule, either by acts of legislation or by judicial decisions, in England and in most of the States, that the witness in such cases is obliged to testify. Yet if the testimony might be properly excluded on another ground, there is no just cause of complaint. It

should be noticed, that the answer could have no tendency to prove the bill to be accommodation paper. It was decided in *French* v. *Grindle*, 15 Maine R. 163, that a negotiable promissory note, free from usury and made for value as between the parties to it, might be indorsed by the holder and sold at a greater discount than legal interest, and the transaction would not be usurious. It has been before stated, that this bill must be regarded as of that description of paper; and the testimony coming from the answer could not have constituted a legal defence. Nor could it have been available in mitigation of damages, although it might have been, if the suit had been against the party from whom it was purchased. *Braman* v. *Hess*, 13 Johns. 52. If it should be admitted therefore, that the witness did not come within the rule, which admits the declarations of the real party in interest and relieves him from giving testimony, the Judge might properly exclude the testimony as irrelative.

There can be no doubt, that the Judge properly determined, that he would not pass any order respecting the defendant's claim to have a further answer of the plaintiff to the bill in equity. It would be a most extraordinary proceeding to call upon a presiding Judge, to order a further answer to be made to a bill in equity, no otherwise before him than as testimony in a suit at law.

The holder of a bill or note may maintain a suit upon it in his own name with the consent of the party interested. *Bragg* v. *Greenleaf*, 14 Maine R. 396.

The effect of giving time to the principal has been fully considered in the cases of *Page* v. *Webster*, 15 Maine R. 249, and *Leavitt* v. *Savage*, 16 Maine R. 72. And the rights of the surety are stated to be impaired and he is therefore discharged, when the creditor has disabled himself to proceed against the principal at law, or has placed himself in such a position, that the principal can in equity obtain an injunction against his proceeding. The first clause in the contract of the 19th of November, 1838, between the plaintiff and the principal debtor provides, that the action pending

between them should be defaulted at the next term of the Court. This was for the benefit of the plaintiff, relieving him from the introduction of testimony, and the effect would be to enable him to obtain judgment sooner, rather than to give time. The next clause provides, that the action shall be continued for judgment at the next term "if one thousand dollars of the debt is paid before the Court sits in December next." This was a conditional contract to give time to the principal, and might have brought the case within the principle deduced in the *Bank of the United States* v. *Hatch*, 6 Peters, 250, if there had been a performance on the part of the debtor. It was decided in *Badnall* v. *Samuel*, 4 Price, 174, that a conditional agreement not performed, to give time to the acceptor on his paying part, did not discharge the indorser. In this case the condition was not performed and the proposed delay was not granted.

*Judgment on the verdict.*